Judge Owsley
delivered the opinion of the court.
This is a contest for land under adverse, interfering claims.
The appellee was complainant in the court below, and asserts his right under the following entry:
“1780, May 31 — William Webb enters 2000 acres upon a treasury warrant, on Stoner’s fork, opposite to an improvement made by David Williams, and sold to Robert Hamilton, running down the creek for quantity^ including the improvement, and on both sides of the creek, about 1⅞- miles below Stoner’s.”
Williams’ improvement, called for in this entry, is described upon the plat to lie on Stoner’s fork, not very remote from Stoner’s improvement; and although it is proven to have been known at the date of the entry by sever-ul persons, it may not, perhaps, at that time have acquired *130 that degree of notoriety requisite to support an entry containing no other call of description, but when taken in connection with the other calls of Webb’s entry, we apprehend there could have been but little difficulty in any person, so disposed, finding the improvement; for it is proven Stoner, before the commencement of Webb’s entry, had raised a crop of Corn at his improvement, and both Sto-ner’s fork and improvement at the date of the entry, were generally known by those conversant in that part of the country, and as Williams’ improvement was only about two hundred and seventy poles below Stoner’s, when at the latter there could have been no difficulty in finding the former.
An entry cal-lmg“to lie on botifdd-s to include 'an improvement foíc-iantity ’’ sliouldbareiy include the improvem nt, hm and the creek bisect the lines m end eg-ress*3
a survey mi le and re-iiiorityofthe owner, does ” - cr entry; but theo-wnerhas ve vey < * tiom.
We are of opinion, therefore, that Webb’s entry contains sufficient precisión, and as the survey upon which he obtained his patent, conforms strictly to the calls of the entry, by beginning upon Stoner’s fork, just above and barely including Williams’ improvement, and extending ^own tbe creek on both sides so far as by conforming to a rectangular figure, and making the creek equally bisect the upper and lower lines, includes the quantity, the court did ¡n c]ecreein2; in his favor; unless, as is contended, that
survey was improperly made, in consequence oí a survey which had been previously executed upon the same war-ran^ and admitted to record by the surveyor,
The illegality of the latter survey, is endeavored to be maintained upon the hypothesis, that the making of the first survey was a perfect extinguishment of the authority the surveyor: for it is contended the warrant gave the authority to the surveyor, and by executing and recording the first survey the warrant became merged, and hence it inferred the authority of the surveyor became extinct, and the case of Estill vs. Hart’s heirs, Harden’s Rep. 567, is cited and relied on to support the position,
I w'‘- !1°í be denyed but in a claim like that, of Webb’s, a warraiit Was not only necessary to justify the making of his location with the surveyor, but also indispensible as an authority for the surveyor to make a survey; but wc apprehend, from a just construction of the law of 1779,a after the entry was made with the surveyor, and whilst he held the warrant, unless in the presence of Webb or his agent, tine surveyor Was not bound, nor was he permitted to proceed to make the survey. That the attendance of the owner or his agent at the making of the survey, was aft; *131 cessary, is not only inferrible from the circumstance of the act requiring of the surveyor to give notice of the time he would proceed to make the survey, but we apprehend re-suits incontestably from the circumstance of there being a forfeiture of the right incident to the failure of the owner to attend at the time appointed by the surveyor to make the survey.
If, then, we are correct in supposing the act bf 1799 required either the attendance of the owner or his agent at the making of his survey, it follows, pretty clearly, the surveyor should be controlled in executing the survey by the directions of the owner; for it would be preposterous to re7 quire of the owner, under pain of forfeiting his right to attend, and yet, when present, not to allow him any control over the survey. To allow the owner a control over the making his survey, does not only accord with what we suppose the most obvious meaning of the law, but is better calculated to shield the surveyor from damages to which, by a different construction, he would be imminently exposed; for if the owner has no right to direct the manner of the survey, it would seem necessarily to follow, that the surveyor, as an officer of government, should, at his peril, make the survey strictly correct, and for any departure from the calls of the entry, he would be accountable to the owner; but if the owper should direct the survey, then, as a departure from the calls of the entry would be occasioned by his own act, he would have no just cause of complaint against the surveyor. To give such a construction to the act of 1779, therefore, as would impose upon the surveyor the unreasonable responsibility of making the survey, in every case, conform strictly to the calls of the entry, we capnot suppose correct; but as the act requires the attendance of the owner, his directions should be regarded by the surveyor in making the survey.
Assuming, then, that the act requires either the attendance of the owner or his agent, at the making of his survey, it will not be contended, but the principle admitted with all its force, (as was adjudged by this court in the case referred to in argument,) that where there has been such an attendance, the warrant becomes merged in the survey, and after it is recorded by the surveyor, no other survey can be again made; for, as in such a case, the surveyor has executed his authority, the authority itself be-copes extinct, and by no act, either of the owner of the *132 entry or surveyor, can the authority be again resuscitated.
Anenü-yon warrantvar°n ⅛ from the certificate, ioses.iis P!'e' cmptive die-r.ity to me ex entof the variance.
But, as we have before shewn, the surveyor has no authority to make a survey, unless he is attended either by the owner or his agent, and even then subject to the control and directions of the owner or agent, it follows, that to make the survey without the attendance of either, or contrary to their directions, as it does not come within tl\e sphere of the authority, cannot be denominated an execution or extinguishment of the authority, and hence it inevitably follows, that if such a survey be made, the owner may, notwithstanding, cause another survey to be executed in conformity to his entry.
The first survey made in this case, therefore, as it is proven to have been made contrary to the express directions of the agent of Webb, we are of opinion it did not preclude him from making the latter, and, consequently, he has shewn himself equitably entitled to a surrender of the appellant’s claim.
With respect to the claim of the appellants, relied on arSumenL it need only be remarked, that the entry with the surveyor is junior to that of the appellee’s, and as it is variant from the pre-emption certificate of the commissioners in virtue of which it was made, it cannot possess • r •. * superior digmty. .
The decree of the court below must, therefore, he affirmed with costs.
The counsel for the appellants having procured a rehearing, the cause came on in the fall term 1817; when

 1 Lilt:411.